UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDER LARSEN and CAREN CURRIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 1:26-cv-00138-SNLJ |
| | ) | |
| HOMESITE INSURANCE COMPANY OF THE MIDWEST and K2 CLAIMS SERVICES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motions to dismiss following removal of the case from state court to this Court. [Docs. 6, 8]. For the reasons set forth below, the motions are granted.

## I. BACKGROUND

This action arises out of dealings between homeowners and insurance entities. [Doc. 3]. Self-represented plaintiffs Alexander Larsen and Caren Currier filed this lawsuit in state court against defendants Homesite Insurance Company of the Midwest ("Homesite") and K2 Claims Services LLC ("K2"), asserting claims for breach of contract (Count I), vexatious refusal to pay (Count II), fraud (Count III), fraud in the inducement (Count IV), unjust enrichment (Count V), and negligence (Count VI). Counts I and II are asserted solely against Homesite. [Doc. 3, ¶¶ 29-36]. Defendant K2 removed the action to this Court on the basis of diversity of citizenship. [Doc. 1, ¶¶ 6-8]. Both defendants, jointly represented, then moved to dismiss the case. [Docs. 6, 8].

Defendant K2 moved to dismiss for failure to state a claim as to Counts III-VI. [Doc. 6, p. 2]. Defendant Homesite moved to dismiss for insufficient service of process as to all counts and in the alternative for failure to state a claim as to Counts III-VI. [Doc. 8, pp. 1-2]. Plaintiffs did not file a response.

## II. LEGAL STANDARD

### A. Insufficient Service of Process

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to move to dismiss a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "In a case that has been removed from state court, the sufficiency of service of process prior to removal is determined by state law." *Barner v. Thompson/Ctr. Arms Co. Inc.*, 796 F.3d 897, 900 (8th Cir. 2015). "[T]he federal statute governing process after removal clearly contemplates that the sufficiency of service will only be determined in accord with federal law when the plaintiff makes an attempt at service following removal." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829, n. 4 (8th Cir. 2003) (citing 28 U.S.C. § 1448). "Once a defendant challenges service, a plaintiff bears the burden of proving that it was proper." *Enterprise Bank & Trust v. May,* 4:20-cv-00278-JAR, 2020 WL 7056011 at *2 (E.D. Mo. 2020).

### B. Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion, the court assumes a plaintiff's well-pled factual allegations to be true and makes all reasonable inferences in the plaintiff's favor. *Glick v. W. Power Sports,*

*Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). Further, the court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, the court does not accept as true legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the court to "draw on its judicial experience and common sense." *Id.* at 679, 682.

## III. DISCUSSION

As an initial matter, plaintiffs' failure to respond to arguments raised in the motions to dismiss may be construed as an abandonment of their claim or a concession to the opposing argument. *Muller v. Blue Diamond Growers*, 683 F. Supp.3d 933, 937 (E.D. Mo. 2023); *Little v. United States Dep't of Def.*, 4:21-cv-01309-JAR, 2022 WL 1302759, at *3 (E.D. Mo. May 2, 2022); *Ursery v. Federal Drug Enforcement Admin.*, 4:12-cv-01911 HEA, 2014 WL 117627, at *2 (E.D. Mo. Jan. 13, 2014). On that basis alone, the motions to dismiss may be granted. That said, the Court will review the motions on the merits.

**A. Improper Service of Process**

As stated, *supra*, the sufficiency of service of process prior to removal is determined by state law. A corporation may be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual" ("Option 1") or by delivery to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" ("Option 2"). Fed. R. Civ. P. 4(h). Defendant Homesite argues that service in this case does not satisfy either option because "[p]laintiffs purported to serve Homesite via the New Madrid County Sheriff's Office by delivering a copy of the Summons and Complaint to a person named Melissa Coots located at 603 S Main, Sikeston, Missouri 63081." [Doc. 9, pp. 1-4]. The Return of Service lists that address. [Doc. 9-1, p. 3].

Option 1 for service of process is in the manner prescribed by Rule 4(e)(1) for serving an individual. Fed. R. Civ. P. 4(h). Rule 4(e)(1) allows service by "following state law . . . in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Missouri law requires that service on a foreign insurance company be made by delivering the petition and summons to the Missouri Director of Commerce and Insurance. *Bate v. Greenwich Ins. Co.,* 464 S.W.3d 515, 517 (Mo. banc 2015) (citing § 375.906.2 RSMo). Indeed, it is a prerequisite for an insurance company seeking to do business in Missouri to grant the Director an irrevocable power of attorney to receive service of process. *Id.* (citing § 375.906.1 RSMo). Plaintiffs did not properly serve under Option 1 because the Missouri Director of Commerce and Insurance is not located at the address listed on the Return of Service, and "Melissa Coots" is not the Missouri Director of Commerce and

Insurance.[1]

Option 2 for serving process is delivery to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h). When defendant challenged service, the burden shifted to plaintiff to show Melissa Cootes is "an officer, a managing or general agent, or any other agent authorized" to receive process. *Enter. Bank & Trust,* 2020 WL 7056011 at *2. Plaintiff did not make such a showing. The Complaint merely identifies Melissa Coots as "Defendants' representative." [Doc. 3, ¶ 26]. Insofar as this indicates employment, mere employment does not make an officer, a managing or general agent, or an agent authorized to receive service. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615, 624 (6th Cir. 2004) ("A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control."). Plaintiffs did not properly serve Homesite according to either option under Rule 4(h). As a result, the Complaint will be dismissed as to Homesite.

**B. Failure to State a Claim**

***1. Count III - Fraud***

Plaintiffs allege fraud in the form of two misrepresentations. [Doc. 3, ¶ 38]. "In alleging fraud or mistake, a party must state with particularity the circumstances

---

[1] The office of the Missouri Director of Commerce and Insurance is located in Jefferson City, and the Director is Angela Nelson. *See* https://insurance.mo.gov/about-department/contact-us (last visited November 16, 2026).

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Arnold v. AT & T, Inc.*, 4:10-cv-2429-SNLJ, 2012 WL 1441417, at *10 (E.D. Mo. Apr. 26, 2012) (*Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920 (8th Cir.2001)); *see also In re NationsMart Corp. Securities Litig.,* 130 F.3d 309, 320–21 (8th Cir.1997) (requiring plaintiffs to demonstrate who made the allegedly fraudulent statement, when it was made, and why it is allegedly false and to plead specific facts showing how alleged fraudulent omissions were material). "In other words, the party must typically identify the *who, what, where, when, and how* of the alleged fraud." *Arnold*, 2012 WL 1441417, at *10 (citing *BJC Health Sys. v. Columbia Cas. Co.,* 478 F.3d 908, 917 (8th Cir. 2007)) (cleaned up and emphasis added). "Compliance with the particularity requirements of Rule 9 requires plaintiffs to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (cleaned up).

Defendant K2 argues that plaintiffs did not plead fraud with requisite particularity by failing to (1) specify which misrepresentations were made by defendant Homesite and which by defendant K2, (2) identify the employee of each defendant who allegedly made that defendant's false representations, (3) identify what aspect of the representation was

false, and (4) specify how plaintiffs became aware it was false. [Doc. 7, pp. 5-7]. Each argument will be addressed below.

One representation the Complaint expressly attributes to defendant K2 is that defendant K2 "misrepresented inspection findings and claim statuses." [Doc. 3, ¶ 38]. Therefore, the Complaint meets the which-defendant requirement of Rule 9(b) in its claim of fraud for this representation. The other representation, that the "Property was fully insured as a 'regular house' based on a review of Google Maps imagery, without conducting an on-site inspection prior to binding coverage" is attributed to both defendants in one part of the Complaint but only to defendant Homesite in another part. [Doc. 3, ¶¶ 10, 38]. Therefore, the Complaint does not meet the which-defendant requirement of Rule 9(b) in its claim of fraud for this representation.

"[T]he party must typically identify the who . . . of the alleged fraud." *BJC Health Sys.*, 478 F.3d at 917 (cleaned up). The Complaint identifies "Grant Punches" and "Stephen Denton" as "assigned inspectors" and "Melissa Cootes" as the "representative" who did the "communicat[ing]." [Doc. 3, ¶¶ 16, 26]. Therefore, the Complaint meets the which-employee requirement of Rule 9(b).

Plaintiffs must "explain why the statements were fraudulent." *In re BankAmerica Corp. Sec. Litig.,* 78 F. Supp. 2d 976, 987 (E.D. Mo. 1999). It is unclear whether plaintiffs believe the representation that the "[p]roperty was fully insured as a 'regular house'" was false because of a disappointing payout on the first claim [Doc. 3, ¶ 16], partial denial of the second claim [Doc. 3, ¶ 22], or other development. It is also unclear in what way plaintiffs believe K2's representation of "inspection findings and claim

statuses" is false. [Doc. 3, ¶ 38]. Therefore, the Complaint does not meet the how-false requirement of Rule 9(b).

Because plaintiffs did not plead the fraud claim with the particularity required, Count III must be dismissed.

***2. Count IV - Fraud in the Inducement***

The Complaint alleges that "Defendants fraudulently induced Plaintiffs to enter the policy by misrepresenting the scope of coverage and inspection process, knowing the Property's condition would later be used to deny claims." [Doc. 3 ¶ 42]. Fraud in the inducement requires: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Lingo v. Hartford Fire Ins. Co.,* 4:10-cv-00084-MLM, 2011 WL 1642223, at *4 (E.D. Mo. 2011).

Defendant K2 argues the economic loss doctrine bars this claim. [Doc. 7, p. 6]. Under the economic loss doctrine, "[a] fraud claim *independent of the contract* is actionable, but it must be based upon a misrepresentation that was *outside of or collateral to the contract,* such as many claims of fraudulent inducement." *Compass Bank v. Eager Rd. Associates, LLC*, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013) (emphasis in original). "Two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are (1) whether the subject matter of the alleged

misrepresentations was incorporated into the parties' contract, and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Id.* (cleaned up).

The *incorporation of misrepresented subject matter* factor favors the view that the fraud claim is not independent of the contract. Even though many claims of fraudulent inducement are outside of or collateral to the contract, a claim of fraudulent inducement by misrepresentation of "scope of coverage" and "inspection process" is not. [Doc. 3, ¶ 42]. Whatever may have been represented before the parties agreed to the insurance policy, the insurance policy itself is the last word on these subjects. *See Piatt v. Indiana Lumbermen's Mut. Ins. Co.,* 461 S.W.3d 788, 793 (Mo. banc 2015) ("Ultimately, an insurance policy's language determines coverage."); *see also Smiley v. Gary Crossley Ford, Inc.,* 859 F.3d 545, 552–53 (8th Cir. 2017) ("If the document appears to be a complete agreement on its face, it is conclusively presumed to be the final and complete agreement between the parties."). The insurance policy speaks to the scope of coverage at sections labeled "Coverage A-F." [Doc. 1-2, pp. 27-46]. The insurance policy also speaks to the inspection process, albeit briefly [Doc. 1-2, pp. 40]. Furthermore, one would expect such a contract to memorialize any prior agreement about the inspection process.

The *additional damages* factor also favors the view that the fraud claim is not independent from the contract. The chief item of damages prayed for, that is, the

$158,750[2], represents damages from allegedly covered events. [Doc. 3, ¶ 27]. Although damages for "further deterioration" could be considered outside of the contract, here they are the consequential damages of matters within the contract. [Doc. 3, ¶ 17]. Furthermore, plaintiffs pray only for compensatory damages, statutory penalties, punitive damages, interest, and the cost of the suit. [Doc. 3, p. 6].

Thus, both factors suggest the fraud claim is not independent of a contract claim under the economic loss doctrine.

Separately from the economic loss doctrine, defendant K2 argues that it is not plausible that it fraudulently induced plaintiffs to enter into the insurance policy because all alleged contact between plaintiffs and K2 occurred after the policy was issued. [Doc. 7, pp. 7-8]. The Complaint alleges defendant K2, "fraudulently induced Plaintiffs to enter the policy by misrepresenting the scope of coverage and inspection process . . . ." [Doc. 3, ¶ 42]. However, the first factual allegation to mention K2 is that "Defendant Homesite, through its third-party administrator Defendant K2, assigned inspector Grant Punches, who inspected the Property . . . ." [Doc. 3, ¶ 12]. This comes later in time than the insurance policy. [Doc. 3, ¶ 9]. Therefore, it is not plausible that defendant K2 "fraudulently induced Plaintiffs to enter the policy by misrepresenting the scope of coverage and inspection process." [Doc. 3, ¶ 42].

In conclusion, Count IV must be dismissed because the fraud in the inducement claim is not independent of the breach of contract claim, and because it is not plausible

[2] The policy even speaks to the "additional living expenses" part of this figure. [Doc. 1-2 at pp. 32-33].

for defendant K2 to have fraudulently induced plaintiff to enter the insurance policy without some factual allegation of defendant K2's conduct prior to the policy.

### *3. Count V - Unjust Enrichment*

Plaintiffs alleged that they conferred a benefit by paying premiums and defendants appreciated and retained the benefit. [Doc. 3, ¶¶ 44-46]. "To establish the elements of an unjust enrichment claim, the plaintiff must prove that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Wegmann v. Ethicon, Inc.,* No. 4:20-CV-00704 JAR, 2020 WL 5814475, at *12 (E.D. Mo. Sept. 30, 2020); *Siebert v. Peoples Bank, 632* S.W.3d 461, 471 (Mo.App. S.D. 2021). "The mere receipt of benefits is inadequate to show unjust enrichment in the absence of any showing that it would be unjust for the defendant to retain the benefit." *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.,* 883 F. Supp. 2d 797, 822 (E.D. Mo. 2012).

Defendant K2 argues that Count V cannot be maintained because plaintiffs' sole remedy lies in contract. [Doc. 7, p. 10]. "Missouri law does not allow a plaintiff to maintain an action for [unjust enrichment] when an express contract governs the subject matter for which recovery is sought." *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care,* 820 F.3d 950, 955–56 (8th Cir. 2016). Here, the subject matter for which recovery is sought is insured property governed by an insurance policy.

Additionally, defendant K2 argues that an unjust enrichment claim for retention of premiums under an insurance policy cannot be maintained against it because it is not a party to the policy nor in privity with a party to the policy. [Doc. 7, ¶ 9]. Indeed, the

Court finds that element (3)—that defendant K2 accepted and retained the premiums paid by plaintiffs—is not plausible in the absence of a factual allegation that K2 was a party to the contract.

Count V must be dismissed because an express contract governs the subject matter and plaintiffs have failed to plausibly allege that defendant K2 was unjustly enriched by their payment of premiums.

***4. Count VI - Negligence***

Defendant K2 raises the economic loss doctrine in response to the negligence claim. [Doc. 7, p. 10]. "The economic loss doctrine bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (cleaned up). "[N]egligence is a tort." *Bigby v. United States,* 188 U.S. 400, 408 (1903). Plaintiffs claim their injuries result from a breach of contractual duty to "fully investigate, adjust, and pay for covered losses." [Doc. 3, ¶ 32]. "Pecuniary loss . . . means a loss of money or of something having monetary value or economic damages." *Preston v. Waddle,* No. 4:06CV00835 AGF, 2006 WL 8458657, at *4 (E.D. Mo. Dec. 22, 2006) (cleaned up). Plaintiffs sue for an insurance payout or the property damage to which it would be applied, along with the costs of moving. [Doc. 3, ¶¶ 24, 33 and p. 6]. These are pecuniary losses. Therefore, the economic loss doctrine bars recovery for negligence.

Because the economic loss doctrine bars recovery for negligence, Count VI must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Homesite Insurance Company of the Midwest's Motion to Dismiss for insufficient service of process [Doc. 8] is **GRANTED**. and it is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that defendant K2 Claims Service LLC's Motion to Dismiss for failure to state a claim [Doc. 6] is **GRANTED** and all claims against it are **DISMISSED without prejudice**.

A separate Order of Dismissal will be entered.

**SO ORDERED** this 16th day of November, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE